UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
GAETANO DEVELOPMENT CORP., GATEWAY
IV, LLC, and HARTFORD FIRE INSURANCE
COMPANY a/s/o Gateway IV, LLC,

                           Judge Rakoff

                    Plaintiffs,

                           Case No.: 09-CV-10090

    -against-


GOODMAN MANUFACTURING COMPANY, L.P.,
GOODMAN COMPANY, L.P. and GOODMAN
GLOBAL, INC.

                    Defendants.
-------------------------------------------------------------X
GOODMAN COMPANY, L.P.

                    Third-Party Plaintiff,

    -against-

TOWER MANUFACTURING CORPORATION,

                  Third-Party Defendant
-------------------------------------------------------------X
TOWER MANUFACTURING CORPORATION,

                  Second Third-Party Plaintiff,

    -against-

EVEREX COMMUNICATIONS, INC., PRIME
TECHNOLOGY (GUANGZHOU), INC.,
CONNECTICUT PTAC SERVICES, LLC, and
COOL TECH HVAC SERVICE, LLC

                  Second Third-Party Defendants.
-------------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
SECOND THIRD-PARTY DEFENDANT, EVEREX COMMUNICATIONS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

                                                                                              **PAGE**

Table of Authorities ................................................................. ii

Preliminary Statement............................................................. 1

Statement of Facts ................................................................. 1

Argument

      Introduction ................................................................. 1

POINT I

      TOWER'S CONTRIBUTION CLAIM MUST BE
      DISMISSED AS A MATTER OF LAW ...................................... 3

POINT II

      TOWER'S COMMON LAW/IMPLIED INDEMNIFICATION
      CLAIM ASSERTED AGAINST EVEREX MUST BE
      DISMISSED AS A MATTER OF LAW ...................................... 3

POINT III

      TOWER'S ALTERNATE THEORY REGARDING
      CAUSATION LACKS MERIT AND SHOULD BE
      DISMISSED AS A MATTER OF LAW ...................................... 10

CONCLUSION ...................................................................... 14

# TABLE OF AUTHORITIES

Page

*Federal Cases*

*DMJ Associates, L.L.C. v. Campasso,*
2008 WL 451799 at 7 (E.D.N.Y. 2008) .............................................. 4

*Orsini v. Kugel,*
9 F.3d 1042, 1047 (2d Cir. 1993) ..................................................... 4

State Cases

*Glaser v. M. Fortunoff of Westbury Corp.,*
71 N.Y.S.2d 643, 646, 524 N.E.2d 413, 529 N.Y.S.2d 59 (1988) .................... 8

*Makeun v. State of New York,*
98 A.d.2d 583, 589, 471 N.Y.S. 2d 293 (1st Dept. 1984) ...........................4, 5

*Rock v. Reed-Prentice Div. of Package Machinery Co.,*
39 N.Y.2d 34, 346 N.E.2d 520, 382 N.Y.S.2d 720 (1976) ......................... 4

*Rosado v. Proctor & Schwartz, Inc,*
66 N.Y.2d 21, 24, 484 N.E.2d 1354, 494 N.Y.S.2d 851 (1985) .................... 3

*SSDW Company v. Feldman-Misthopoulos Associates,*
151 A.D. 2d 293, 295, 542 N.Y.S.2d 565 (1st Dept. 1989) ........................ 8

Federal Statutes

Federal Rule of Civil Procedure 56 ................................................. 1

State Statutes

CPLR § 1401 ............................................................... 10

General Obligations Law § 15-108 ............................................. 2 - 5, 7

## PRELIMINARY STATEMENT

Second Third-Party Defendant, Everex Communications, Inc. ("Everex"), submits this reply memorandum of law in further support of Everex's motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure granting Everex summary judgment dismissing the claims asserted against it by Tower Manufacturing Corporation ("Tower") and all cross-claims asserted against it in the action.

## STATEMENT OF FACTS

Facts in support of the instant motion are set forth in Everex's Local Rule 56.1 Statements, as well as the affidavit and exhibits of J. Duncan Glover, Ph.D., P.E., submitted in accordance with Rule 56(e) of the Federal Rules of Civil Procedure, the Declaration of Everex's C.E.O., Alex Sy and the exhibits attached to and referenced by the Declaration and Reply Declaration of James M. O'Hara, Esq.

## ARGUMENT

## INTRODUCTION

In its partial opposition to Everex's motion, Tower conceded that its claim for contractual indemnification against Everex was baseless. Tower therefore withdrew its cause of action against Everex for contractual indemnification. That leaves only its common law claims for contribution and indemnification against Everex and those too are baseless and therefore must be dismissed. Tower's contribution claim against Everex must be dismissed for the reasons articulated by Everex in its moving papers and by Tower in support of Tower's motion for summary judgment against Goodman, that Goodman's claim for contribution against Tower was extinguished upon Goodman's

1

settlement with the original plaintiffs, in which Goodman obtained a release from such plaintiffs and triggered the application GOL 15-108. As there is no viable claim against Tower for contribution, it has no viable claim against Everex to share in the apportionment of liability as would otherwise be allowed under Article 14 of the C.P.L.R. Thus, Tower's common law claim for contribution must be dismissed.

Tower's claim for common law indemnification must be dismissed because it has no special relationship with Everex (e.g. agent/servant) from which a claim for indemnification could arise. The only other basis for such indemnification would be based upon a showing that Tower was free from fault and Everex was completely at fault for the subject fires. In the facts of our case, in which only Tower ( not Goodman) is claiming that Everex is at fault, if Tower is able to prove that it is free from fault, it will have no liability to Goodman and its third-party claim against Everex would be obviated. Thus, Tower's common law claim for indemnity against Everex must be dismissed as well and summary judgment must be granted to Everex dismissing all claims against it.

Finally, Tower's second third-party complaint against Everex should be dismissed on the merits because of a lack of evidence of product defect, causation or negligence by Everex.

## POINT I

## TOWER'S CONTRIBUTION CLAIM MUST BE
## DISMISSED AS A MATTER OF LAW

GOL § 15-108 provides that a tortfeasor who settles and obtains a release of liability "can neither obtain, nor be liable for, a contribution claim." *Rosado v. Proctor & Schwartz,* Inc, 66 N.Y.2d 21, 24, 484 N.E.2d 1354, 494 N.Y.S.2d 851 (1985). Therefore, all contributions claims in the main third-party action between Goodman and Tower are extinguished by the statute. Tower does not dispute this fact. To the contrary, Tower has contemporaneously moved for summary judgment against Goodman to dismiss Goodman's contribution claims predicated upon GOL § 15-108.

Goodman has opposed Tower's motion to dismiss Goodman's contribution claim by alleging that GOL § 15-108 is inapplicable because the settlement of claims against Goodman was made after the court granted the original plaintiffs summary judgment against Goodman on liability as to certain claims they asserted against Goodman. However, the General Obligations Law does not provide an exception to the rule extinguishing contribution claims after settlement merely because summary judgment on liability was granted against the settling party. There must first be a final determination of liability and damages before contribution claims may survive a settlement. As set forth in detail below, the settled law is that the GOL applies to extinguish claims where a settlement is made before a claim is fully resolved and that a settlement of liability only does not fully resolve the suit.

Where a tortfeasor settles an action after a final determination of liability and damages, the settling tortfeasor's contribution claims are not extinguished by GOL § 15-108. The distinction between our case, where Goodman settled after a finding of liability, but before there was a damages trial, and one in which the settlement came after a final determination of both liability and damages, has been recognized by the Court of Appeals in *Rock v. Reed-Prentice Div. of Package Machinery Co.*, 39 N.Y.2d 34, 346 N.E.2d 520, 382 N.Y.S.2d 720 (1976). The distinction is based upon the obligation to pay the claimants. If the obligation to pay is created by the settlement agreement, contribution claims are extinguished. That is our case. If the settlement is made after a money judgment has been determined, the payment would be predicated upon the existence of the money judgment and the contribution claims are not extinguished by GOL § 15-108. *Makeun v. State of New York*, 98 A.d.2d 583, 589, 471 N.Y.S. 2d 293 (1st Dept. 1984); *Orsini v. Kugel*, 9 F.3d 1042, 1047 (2d Cir. 1993). The obligation to pay exists even though the parties settle the action for an amount less than the judgment. *Id.* at 589-590; *Id.* at 1047.

GOL § 15-108 bars contribution claims when a settlement between the parties effectively ends the dispute between them by avoiding any further litigation of the claims between them. *DMJ Associates, L.L.C. v. Campasso*, 2008 WL 451799 at 7 (E.D.N.Y. 2008). Since there was no obligation to pay prior to the settlement, the Courts view such payments as voluntarily made and subject to GOL § 15-108's bar to contribution claims, *Makeun, supra* at 590.

In *Makeun, supra*, there was a bifurcated trial; plaintiff obtained a jury verdict of liability for negligence against a defendant. Defendant settled the action with plaintiff

after the damages trial commenced, but prior to the rendering of a jury verdict. The Court held that the term "liability", as used in GOL § 15-108 must include a determination by the fact finder of both culpability and damages. *Id.* at 586 and 591. Therefore, the settlement entered into after an interlocutory judgment as to negligence only and prior to a final judgment determining damages constituted a voluntary, prejudgment settlement subject to GOL § 15-108's bar to contribution claims. *Id.* at 586 and 591. We submit that Makeun, supra, cannot be distinguished from the instant case and is binding here to require that Goodman's claim for contribution be dismissed.

In the instant case, the summary judgment Order against Goodman expressly denied plaintiff Hartford's request for monetary damages and did not award any monetary damages to plaintiffs. This Order was not a final determination by the fact finder of both liability and damages, nor did it end the dispute between Goodman and plaintiffs. Goodman was under no obligation to make any payments to the plaintiffs at that time. Goodman bought its peace from the main party plaintiffs in order to avoid the scheduled trial which would have resolved the remaining liability issues and determined the amount of damages, if any, that it would have had to pay. Therefore, GOL § 15-108's bar to contribution claims applies to Goodman's claims for contribution against Tower and that *ipso facto* vitiates any contribution claims that Tower might have had against Everex. Tower's plaint that it did not lose its contribution rights because it was not the settling party misses the point. Tower's has no right of contribution claim against Everex because Goodman has no contribution claims against it.

Tower contends that its right to contribution arises because it may be a joint tortfeasor with Everex in causing the fires to the 3 PTAC units at plaintiffs' building.

5

Tower is mistaken. Goodman's Third-Party Complaint against Tower asserts five causes of action and is based upon the opinions of its experts that the cause of the fires was a poor crimp connection in the Tower power cords' conductors. (Exhibit E to the O'Hara Declaration.) Goodman's first cause of action is for contractual indemnification arising out of its purchase order with Tower and alleges that if Goodman is liable to plaintiffs it is due to defects in Tower's power cords. The second cause of action is predicated upon statutory indemnification under Texas law and is likewise based solely upon Tower's power cords being the cause of the fires due to their being defectively designed and/or manufactured. The third and fourth causes of action sound in common law/implied indemnification and contribution and allege that defects in the Tower power cords caused the subject fires. The final cause of action alleges that Tower's power cords breached express and implied warranties. Therefore, each of Goodman's causes of action is specifically based upon its experts' opinions that Tower's recalled, defectively crimped, power cord caused the fires. (Exhibits 1, 2, 8 and 9 to the Bennett Declaration submitted in opposition to Tower's summary judgment motion and Exhibit E to the O'Hara Declaration.)

Tower can only be held liable to Goodman if its power cord is found to be the cause of the subject fires. Tower does not dispute that Everex was not involved with the design, manufacture, testing or analysis of Tower's recalled power cord. Therefore, Everex cannot be liable for contribution because neither it nor its board contributed to any defects in Tower's power cord.

Here, there will be no apportionment of liability in the action between Goodman and Tower because their contribution claims against each other were extinguished in

accordance with GOL § 15-108. Since there will be no contribution or apportionment of liability in the action between Goodman and Tower, there likewise can be no contribution between Tower and the second third-party defendants, including Everex. The only tort claim remaining in the Goodman/Tower action is for indemnity, whose purpose is not to apportion liability between or among joint tortfeasors. There is no reason to create a jury charge concerning the allocation of liability, as urged by Tower, where there are no contribution claims remaining in the action. Therefore, Tower's cause of action for contribution against Everex must be dismissed in accordance with GOL § 15-108.

## POINT II

### TOWER'S COMMON LAW/IMPLIED INDEMNIFICATION CLAIM ASSERTED AGAINST EVEREX MUST BE DISMISSED AS A MATTER OF LAW

Tower's opposition to Everex's summary judgment motion seeking to dismiss Tower's cause of action for common law/implied indemnification is nonresponsive and insufficient to defeat Everex's motion. Tower's opposition, in essence, asserts that GOL § 15-108 does not bar indemnification claims, that it can assert inconsistent theories of law, that common law indemnification includes situations of vicarious liability and that it has evidence that Everex's control board contributed to or caused the fires. None of these arguments is sufficient to defeat Everex's motion.

Everex never claimed that GOL § 15-108 bars claims for indemnification and our moving papers clearly state this fact. Everex also does not argue that Tower cannot assert inconsistent theories of recovery such as contribution and indemnification. Neither of these points is crucial to Everex's motion. Everex's position is that Tower's

7

claim for common law indemnification lacks merit as a matter of law and that it must be dismissed. Tower's opposition papers fail to demonstrate that its claim for common law indemnification has merit.

Tower's assertion that common law indemnification involves situations where a party is found to be vicariously liable without any fault attributed to them is likewise not disputed by Everex. In fact Everex agrees that common law/implied indemnification is appropriate where the party seeking indemnification "had committed no wrong, but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to an injured party". *Glaser v. M. Fortunoff of Westbury Corp.*, 71 N.Y.S.2d 643, 646, 524 N.E.2d 413, 529 N.Y.S.2d 59 (1988). The predicate for common law indemnity is vicarious liability without any fault on the part of the party seeking indemnification. *SSDW Company v. Feldman-Misthopoulos Associates*, 151 A.D. 2d 293, 295, 542 N.Y.S.2d 565 (1st Dept. 1989).

In the instant case, however, Tower does not claim any special relationship with Everex nor does it claim that it is being held liable to Goodman due to any obligation imposed by law. Tower does not claim that it is being held vicariously liable for the alleged negligence of Everex. Instead, Tower claims that it has evidence that Everex is either a sole or contributing force in the cause of the subject fires which entitles Tower to maintain its common law/implied indemnity claim. Tower is mistaken. Tower has no right to be indemnified by Everex even if Everex had a role in causing the fires, which of course is strenuously denied.

The flaw in Tower's opposition is that it fails to realize or even address the fact that no matter what the result is in the Goodman/Tower action concerning claims for

8

common law/implied indemnity, Tower's claims against Everex for common law/implied indemnification must be dismissed.

Tower agrees that if it prevails in defeating Goodman's claim for indemnification, its claims against Everex for indemnification will be obviated and moot. For Tower to be successful in defeating Goodman's claim, it must show that Goodman is not free from fault and that it (Tower) is not entirely at fault for the fires. This would mean that Tower was able to prove that its recalled defectively crimped power cords did not cause the subject fires. This is the sole purpose for the evidence that Tower has developed regarding alternative causes of the fires, to defeat Goodman's common law indemnification claim that Tower's power cords caused the fires.

If Goodman prevails on its claim for indemnification, it will have proven (a) it is free from fault and (b) Tower is at fault (thereby rendering Tower's allegations as to Everex's negligence moot). If that is the case, then Tower will not be able to prove that it is free from fault *vis a vie* Everex and its claims for indemnification against Everex must fail. If the jury determines that Tower's recalled, defectively crimped power cord was the cause of the subject fires, Tower cannot retry its case against the second third-party defendants alleging, in essence, that the jury was wrong concerning the power cords being the cause of the fires.

Based upon all of the foregoing, Tower's common law/implied indemnification claim against Everex must be dismissed because either Tower will be held to be at fault barring its right to indemnification or Tower will not be liable and will have no need for indemnification. Tower's opposition to Everex's summary judgment motion completely ignores this fact.

# POINT III

## TOWER'S ALTERNATE THEORY REGARDING CAUSATION LACKS MERIT AND SHOULD BE DISMISSED AS A MATTER OF LAW

Tower's allegation that the fires were caused by inadequate spacing of terminals on the Everex control boards lacks merit. Tower's theory is based upon pure speculation and ignores the inescapable fact that all of the fires to Goodman PTAC units at plaintiffs' premises and elsewhere all involved a recalled, defectively crimped Tower power cord. (Glover Affidavit and Sy Declaration.) The Everex control boards, without any modification to the spacing between the terminals, are still being used in Goodman PTAC units today without incident. (Glover Affidavit, Sy Declaration and Goodman's opposition to Tower's summary judgment motion.) It is the classic res ipsa loquitur scenario, but for the recalled, defectively crimped Tower cords being attached to the Everex control board, there would not have been any fires. This is the most compelling piece of evidence that Tower's defective power cords caused the subject fires.

Neither Tower nor its experts can explain away this inescapable fact. At his deposition, Tower's expert witness, Allen Eberhardt, Ph. D. ("Eberhardt"), could not explain why there have been no fires since Goodman stopped using the recalled, defectively crimped Tower power cord. (Eberhardt deposition at pp. 236-244 attached to Bennett's Declaration at Exhibit 3.) This failure to explain away this fact is the fatal flaw in Tower's case.

Tower's argues that Everex's position that the cause of the subject fires is the defectively crimped Tower power cord is highly remote. Tower's argument is

misplaced. Not only did all of the subject fires and subsequent fires involve a defectively crimped Tower power cord, once Goodman stopped using the cords, the fires stopped. Eberhardt testified that the loose crimp will create heat and that the heat on the surface of the crimp could reach 800 degrees Fahrenheit. (Eberhardt deposition at pp. 122-123 attached to Bennett's Declaration at Exhibit 3.) He further admitted that the melting point for the power cord's PVC insulation is only 400 degrees Fahrenheit. (Eberhardt deposition at p. 126 attached to Bennett's Declaration at Exhibit 3.) He further testified that when PVC melts it produces hydrochloric acid which is both conductive and corrosive and could create arc tracking on the Everex control board. (Eberhardt deposition at pp. 151-153 attached to Bennett's Declaration at Exhibit 3.) Eberhardt could not rule out that there was melted PVC from the Tower power cord on the circuit boards involved in the subject fires and that he would see a similar pattern of damage to the boards whether the damage came from arcing or from the insulation on the Tower power cord. (Eberhardt deposition at pp. 113-114 and 129 attached to Bennett's Declaration at Exhibit 3.)

Tower's reliance upon the testimony of two service technicians Kenneth Shanklin ("Shanklin") of Connecticut PTAC and Vincent Croce ("Croce") of Cool Tech is similarly misplaced. Their testimony is taken out of context in order to support Tower's tenuous causation theory.

Shanklin testified that did not look at the entire boards when he was performing his work and that he did not recall replacing any circuit boards at plaintiffs' premises. (Shanklin deposition at pp. 88, 117-118 attached to Haworth's Declaration at Exhibit P.) He did not inspect any of the Tower power cords because he was replacing them.

11

(Shanklin deposition at p. 88 attached to Haworth's Declaration at Exhibit P.) He did observe damage at Line 2 on the Everex control board where the Tower power cord connected to the board and was adamant that the damage (melting) he saw was right at that terminal. (Shanklin deposition at pp. 57-59 and 88 attached to Haworth's Declaration at Exhibit P.) His observations and testimony are consistent with the Tower power cord being the cause of the fires as the melting he observed occurred right where the defectively crimped Tower power cord attached to the board.

Tower's reliance upon the testimony of Croce is puzzling. Croce testified that he did not look for any damage on the Everex control boards and that he only looked at them briefly. (Croce deposition at p. 43 attached to Haworth's Declaration at Exhibit Q.) He only did as he was told and replaced the power cords and control boards at plaintiffs' premises as instructed by the building's superintendant. (Croce deposition at pp. 28, 34 and 42-43 attached to Haworth's Declaration at Exhibit Q.) Therefore, Croce did not see any damage because he was not looking for any damage. He only did what he was told to do.

Tower's tortured, restrictive reading of UL's certification report to support its causation theory is made out of whole cloth. The report specifically cites UL 873 Table 32.1, Column D without any restrictions or limitations. (See Haworth's Declaration in Opposition at Exhibit C.) Tower, however, narrowly interprets this statement to mean that the report refers only to the table and not its footnotes. UL 873 Table 32.1 includes references to footnotes on the table itself and the table cannot be separated from its footnotes as they are the same document. (see Glover Affidavit at Exhibit 7). Therefore, Tower's myopic view of the UL certification report is incorrect.

12

Tower is also mistaken with regard to the required spacing and polarity of the controls on the Everex control board. With regard to polarity, Tower and its experts completely ignore UL 244A which defines opposite polarity as "(a) difference in potential between two points, such that shoring of these two points results in a condition involving an overload; rupturing or printed wiring board tracks, components or fuses; or similar condition." (Glover Affidavit and Sy Declaration.) LINE 2 and COMPRESSOR do not meet this definition of opposite polarity as these traces are intended to be shorted together when in cooling mode. (Glover Affidavit, Sy Declaration and Sy deposition at pp. 111-113 and 146 attached to Haworth's Declaration at Exhibit L.). Therefore the subject terminals on the Everex control board are of the same polarity and the footnotes to UL 873 apply concerning their spacing. (Glover Affidavit and Sy Declaration.) Tower ignores the UL definition of opposite polarity because it would defeat its "theory" concerning how the fires occurred.

Tower's attempt to question the UL certification of the Everex control board also lacks merit. The point is not what tests UL performed on the board, but that UL was satisfied that the Everex control board met its requirements. The UL logo on the control board evidences that UL has reviewed the Everex control board, its specifications and its components, that UL representatives have examined and tested samples of the control board and that UL has determined to it satisfaction that the control board complies with all of the requirements of UL standard 873 entitled, Temperature Indicating and Regulating Equipment. (Glover Affidavit and Sy Declaration.). Tower fails to allege what, if anything, UL did wrong in the certification process and its argument is based upon pure speculation.

13

Finally, Tower has no proof that the Everex control board became contaminated with moisture, dust or other contaminants and is based upon pure speculation. As Eberhardt testified, he cannot tell the difference between damage that came from arcing from damage that came from the insulation on the Tower power cord. (Eberhardt deposition at pp. 113-114 attached to Bennett's Declaration at Exhibit 3.)

## CONCLUSION

Based upon the foregoing reasons, Everex respectfully requests summary judgment dismissing Tower's Second Third-Party Complaint, together with such other or different relief as the Court may deem just and proper.

Dated: Melville, New York
　　　　March 7, 2011

By: *James M. O'Hara*
Dennis M. Perlberg (DP9779)
James M. O'Hara (JO3404)
SPEYER & PERLBERG, LLP
115 Broadhollow Road, Suite 250
Melville, New York 11747
Telephone: (631) 673-6670
Facsimile : (631) 673-7073
*Attorneys for Second Third-Party Defendant*
*Everex Communication, Inc.*

S:\CURRENT\DMP\Everex adv. Goodman\Motions\Everex's Motion for Summary Judgment\Reply Memo of Law.doc