UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GAETANO DEVELOPMENT CORP., GATEWAY
IV, LLC, and HARTFORD FIRE INSURANCE
COMPANY a/s/o Gateway IV, LLC,

                Plaintiffs,

    -against-

GOODMAN MANUFACTURING COMPANY, L.P.,
GOODMAN COMPANY, L.P. and GOODMAN
GLOBAL, INC.

                Defendants.
-----------------------------------------------------------------X
GOODMAN COMPANY, L.P.

                Third-Party Plaintiff,

    -against-

TOWER MANUFACTURING CORPORATION,

                Third-Party Defendant
-----------------------------------------------------------------X
TOWER MANUFACTURING CORPORATION,

                Second Third-Party Plaintiff,

    -against-

EVEREX COMMUNICATIONS, INC., PRIME
TECHNOLOGY (GUANGZHOU), INC.,
CONNECTICUT PTAC SERVICES, LLC, and
COOL TECH HVAC SERVICE, LLC

                Second Third-Party Defendants.
-----------------------------------------------------------------X

Judge Rakoff

Case No.: 09-CV-10090

# **EVEREX'S REPLY TO TOWER'S COUNTER STATEMENT OF MATERIAL FACTS AND OPPOSITION TO EVEREX'S LOCAL RULE 56.1 STATEMENT**

## Introduction

Second Third-Party Defendant, Everex Communications, Inc. ("Everex"), respectfully submits the following reply to Tower's Opposition to Everex's Local Rule 56.1 Statement, dated February 28, 2011 (hereinafter, "Tower's Opposition 56.1 Statement").

## Objections And Reservation of Rights

1. Everex objects to Tower's Opposition 56.1 Statement, to the extent that it does not comply with Local Civil Rule 56.1 (d), which requires the "each statement of fact" set forth by a movant "must be followed by citation to evidence which would be admissible".

2. Everex reserves the right, at trial, or any further motion proceedings in this action, to rely upon any deposition testimony and exhibits that have been adduced during discovery in this action, and to present additional affidavits or declarations, and additional exhibits, if necessary to oppose Tower's position.

3. Everex's reply is not intended as an exhaustive statement of all facts to be adduced by Everex at trial. Everex reserves the right to adduce additional facts in any pre-trial order, and in any trial of this action.

## Reply to Tower's Opposition to Everex's Rule 56.1 Statement

The following reply first lists the specific assertions in the Everex Local Rule 56.1 Statement, followed by statements (if any) in Tower's Opposition Rule 56.1 Statements, followed by Everex's reply to each disputed assertion. Everex's Objections and Reservation of Rights are incorporated by reference into each and every one of

Everex's replies to the assertions in Tower's Opposition Rule 56.1 Statements, whether expressly referenced in the replies, or not.

1. Gaetano Development Corp. and Gateway IV, LLC ("Gaetano") commenced an action against Goodman Global, Inc., Goodman Company, L.P. and Goodman Manufacturing Company, L.P. ("Goodman") for damage it sustained as a result of fires that originated in and were caused by Goodman PTAC units. See Gaetano's Verified Complaint annexed to the O'Hara Declaration at Exhibit A.

**Tower's Opposition 56.1 Statement:**

    **Admitted**: Statement not disputed by Tower.

2. Hartford Fire Insurance Company a/s/o Gateway IV, LLC ("Hartford") commenced a subrogation action against Goodman for damages its insured sustained as a result of fires to its insured premises sustained as a result of fires that originated in and were caused by Goodman PTAC units. See Hartford's Amended Complaint annexed to the O'Hara Declaration at Exhibit B.

**Tower's Opposition 56.1 Statement:**

    **Admitted**: Statement not disputed by Tower.

3. Goodman answered Gaetano's verified complaint denying the allegations set forth therein and asserted several affirmative defenses thereto. See Goodman's Amended Verified Answer annexed to the O'Hara Declaration at Exhibit C.

**Tower's Opposition 56.1 Statement:**

    **Admitted**: Statement not disputed by Tower.

4. Goodman answered Hartford's amended complaint denying the allegations set forth therein and asserted several affirmative defenses thereto. See Goodman's Amended Answer to Amended Complaint annexed to the O'Hara Declaration at Exhibit D.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

5. Goodman thereafter commenced a third-party action against Tower Manufacturing Corporation ("Tower") setting forth causes of action for breach of contract, common law/implied indemnification and contribution alleging that the cause of the fires at the plaintiffs' premises was the defective power cord Goodman purchased from Tower and used as component parts for the Goodman PTAC units sold to and installed at plaintiffs' premises. See Goodman's Third-Party Complaint annexed to the O'Hara Declaration at Exhibit E.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

6. Tower answered Goodman's third-party complaint denying the allegations set forth therein and asserted several affirmative defenses thereto. See Tower's Third-Party Answer annexed to the O'Hara Declaration at Exhibit F.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

7. Tower commenced a second third-party action against Everex and others setting forth two causes of action against Everex based upon common law/implied indemnification and contribution alleging that the subject fires were caused by the control boards designed by Everex and used as component parts in the Goodman PTAC units sold to and installed at plaintiffs' premises. See Tower's Second Third-Party Complaint annexed to the O'Hara Declaration at Exhibit G.

**Tower's Opposition 56.1 Statement:**

  **Admitted**: Statement not disputed by Tower.

8. Everex answered Tower's second third-party complaint denying the allegations set forth therein and asserted several affirmative defenses thereto. See Tower's Third-Party Answer annexed to the O'Hara Declaration at Exhibit H.

**Tower's Opposition 56.1 Statement:**

  **Admitted**: Statement not disputed by Tower.

9. Prior to trial, Goodman and Gaetano entered into a settlement agreement whereby Gaetano released Goodman from all liability in its action in exchange for monetary compensation (amount removed because it is confidential). See the Settlement Agreement between Goodman and Gaetano annexed to the O'Hara Declaration at Exhibit I.

**Tower's Opposition 56.1 Statement:**

  **Admitted**: Statement not disputed by Tower.

10. Goodman and Gaetano were the only two parties who entered into the settlement agreement resolving their litigation. See the Settlement Agreement between Goodman and Gaetano annexed to the O'Hara Declaration at Exhibit I.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

11. A stipulation dismissing the action between Goodman and Gaetano was entered into between them and So Ordered by this Court. See the Stipulation and Order of Dismissal annexed to the O'Hara Declaration at Exhibit K.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

12. Prior to trial, Goodman and Hartford entered into a settlement agreement whereby Hartford released Goodman from all liability in its action in exchange for monetary compensation (amount removed because it is confidential). See the Settlement Agreement between Goodman and Hartford annexed to the O'Hara Declaration at Exhibit J.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

13. Goodman and Hartford were the only two parties who entered into the settlement agreement resolving their litigation. See the Settlement Agreement between Goodman and Hartford annexed to the O'Hara Declaration at Exhibit J.

**Tower's Opposition 56.1 Statement:**

      **Admitted**: Statement not disputed by Tower.

14. A stipulation dismissing the action between Goodman and Hartford was entered into between them and So Ordered by this Court. See the Stipulation and Order of Dismissal annexed to the O'Hara Declaration at Exhibit L.

**Tower's Opposition 56.1 Statement:**

      **Admitted**: Statement not disputed by Tower.

15. The power cord manufactured by Tower that was a component of the Goodman PTAC units that damaged plaintiffs' property was the subject of U. S. Consumer Product Safety Commission's ("CPSC") Recall Alert #08-602 dated August 27, 2008. See CPSC Recall Alert annexed to Glover's Affidavit at Exhibit 5.

**Tower's Opposition 56.1 Statement:**

      **Admits** that the U.S. Consumer Product Safety Commission issued a recall alert on August 27, 2008 with respect to certain Goodman Packaged Terminal Air Conditioner/Heat Pump (PTAC) units and that said recall alert referenced issues with the power cords but Tower denies the accuracy of these reports, that the PTAC fires in apartments 4B and 6B involved recalled power cords or that Tower's power cords caused the PTAC fires at plaintiff's building. See report of Allen Eberhardt, Ph.D. at Ex. G to Haworth Dec. in Support of Summary Judgment and report of Andrew Neuhalfen, Ph.D. at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

      Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion concerning what is expressly set forth in the CPSC Recall Alert.

7

Tower's response disputes the correctness, not the existence of the CPSC Recall Alert and ignores the fact that all of the fires in this action involve Goodman PTAC units, which had a recalled, loosely crimped Tower power cord attached to the PTAC unit at the time of the fire or previously had a defectively crimped Tower power cord attached to it that was replaced prior to the fire, but after the damage was done to Everex's control board. No fires have occurred that did not involve the recalled, defectively crimped Tower power cord. See Glover Affidavit at ¶ 19, Sy Declaration at ¶ 8. Accordingly, Everex's assertion regarding the existence and contents of the CPSC Recall Alert should be deemed admitted.

16. The CPSC Recall Alert states that the hazard to the PTAC units sold by Goodman between February 2007 through June 2008 is that the power cords can overheat posing a burn or fire hazard. See CPSC Recall Alert annexed to Glover's Affidavit at Exhibit 5.

**Tower's Opposition 56.1 Statement:**

> **Admits** that the U.S. Consumer Product Safety Commission issued a recall alert on August 27, 2008 with respect to certain Goodman Packaged Terminal Air Conditioner/Heat Pump (PTAC) units and that said recall alert referenced issues with the power cords but Tower denies the accuracy of these reports, that the PTAC fires in apartments 4B and 6B involved recalled power cords or that Tower's power cords caused the PTAC fires at plaintiff's building. See Eberhardt Rpt. Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt. at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion concerning what is expressly set forth in the CPSC Recall Alert.

8

Tower's response disputes what is contained in the CPSC Recall Alert and ignores the fact that all of the fires in this action involve Goodman PTAC units, which had a recalled, loosely crimped Tower power cord attached to the PTAC unit at the time of the fire or previously had a defectively crimped Tower power cord attached to it that was replaced prior to the fire, but after the damage was done to Everex's control board. No fires have occurred that did not involve the recalled, defectively crimped Tower power cord. See Glover Affidavit and Sy Declaration. Accordingly, Everex's assertion regarding the contents of the CPSC Recall Alert should be deemed admitted.

17. There has been no recall of the Everex control boards. See Glover Affidavit at ¶ 8.

**Tower's Opposition 56.1 Statement:**

    **Admitted**: Statement not disputed by Tower.

18. The only modification of the Goodman PTAC units sold today is that the PTAC units are no longer sold with defective, loosely crimped Tower power cords. See Sy Declaration at ¶ 8.

**Tower's Opposition 56.1 Statement:**

    **Denied**: There is no evidence that the PTAC cords involved in the fires in apartments 2B, 4B and 6B had defective or loosely crimped connections. See Eberhardt Rpt. at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt. at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

9

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion concerning the only modification to the Goodman PTAC units. Instead, Tower simply refutes that the cords did not have a defective loosely crimped connection. Accordingly, Everex's assertion regarding the modification should be deemed admitted.

19. All of the fires involved in this case originated at or near the vicinity of LINE 2-J305 terminal on the Everex board where the Tower power cord's black insulated conductor connects to the control board. See Glover Affidavit at ¶ 9 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: The arcing originated between the Line 2 and Compressor circuits (J305 and J306). See Eberhardt Rpt., p. 3 at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt., p. 7-9 at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion. Both of Tower's experts agree that the Tower power cord attached to the Line 2 and do not dispute that the Compressor is in the vicinity of Line 2. Accordingly, Everex's assertion regarding the modification should be deemed admitted.

20. The cause of all of the fires was a defective, loose crimp connection on the Tower power cord's black insulated conductor. See Glover Affidavit at ¶ 5, 9 and 20 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Eberhardt Rpt., p. 3 at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt., p. 7-9 at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's statement.. Accordingly, Everex's assertion should be deemed admitted.

21. The loose crimp connection caused the Tower power cord to overheat which caused its PVC insulation to melt and its copper wires to oxidize. See Glover Affidavit at ¶ 5, 10, 11 and 20 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Eberhardt Rpt. p. 3-4 and 7 at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt., p. 7-9 at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's experts do opine that the loose crimp connection caused the Tower power cord to overheat and Allen Eberhardt, Ph.D. ("Eberhardt") admits that the power cord's overheating damaged its wires and insulation. See Eberhardt report at pp. 3-4 annexed to the Declaration Scott L. Haworth, Esq. at Exhibit G. Accordingly, this assertion should be deemed admitted.

22. When conductor insulations melt, the melted insulation becomes carbonized and partially conductive. See Glover Affidavit at ¶ 5, 11 and 20 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Eberhardt Rpt. p. 3-7 at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt., p. 6 at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion concerning what happens to insulation material when it melts. Eberhardt testified that this does in fact occur. See Eberhardt deposition at pp. 151-153 attached to Bennett's Declaration at Exhibit 3. Accordingly, Everex's assertion should be deemed admitted.

23. Some of the melted/carbonized insulation material and melted copper from the overheated wire strands gets deposited onto the Everex control board. See Glover Affidavit at ¶ 5, 11 and 20 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Eberhardt Rpt. at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt., p. 6 at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion regarding melted/carbonized insulation material and melted copper from the overheated wire strands getting deposited onto the Everex control board. Accordingly, Everex's assertion should be deemed admitted.

24. The excessive heat from the loose crimp and from the melted/carbonized insulation and/or copper deposits on the board causes the Everex control board to become degraded where the Tower power cord is attached to it. See Glover Affidavit at ¶ 5, 11 and 20 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Eberhardt Rpt. at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt., p. 6 at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion. Accordingly, Everex's assertion should be deemed admitted.

25. The degrading of the control board, resulting from the overheated Tower power cord, creates conditions that allow an arc to occur, which caused the three fires at plaintiffs' premises. See Glover Affidavit at ¶ 11 and 20 and Sy Declaration at ¶ 5.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Eberhardt Rpt. at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt. at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion. Accordingly, Everex's assertion should be deemed admitted.

26. All of the fires in this action and others that caused damage to an end user's property involved Goodman PTAC units with a recalled, loosely crimped Tower power cord attached to the PTAC unit at the time of the fire or previously had a loosely crimped Tower power cord attached to it that was replaced prior to the fire. See Glover Affidavit at ¶ 19 and Sy Declaration at ¶ 8.

**Tower's Opposition 56.1 Statement:**

<u>Denied</u>: <u>See</u> Eberhardt Rpt. at Ex. G to Haworth Dec. in Support of Summary Judgment and Neuhalfen Rpt. at Ex. A to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion. Tower's response fails to state one instance this statement of material fact did not occur. Accordingly, Everex's assertion should be deemed admitted.

27. Everex sought and obtained the approval of UL for the control board prior to its production. See Sy Declaration at ¶ 6.

**Tower's Opposition 56.1 Statement:**

<u>Admitted</u>: Statement not disputed by Tower.

28. Approval from UL means that the control board met or exceeded all of the UL's requirements. See Glover Affidavit at ¶ 13 and 17 and Sy Declaration at ¶ 6.

**Tower's Opposition 56.1 Statement:**

**Denied**: Denied as there is no evidence that tested the spacing of the board at the Line 3 and Compressor circuits. See Chan Dep., p. 28 at Ex. B to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion that UL approved the board and what its approval represents. Tower's reliance upon the deposition testimony of Vincent Chan, an employee of Everex, concerning his lack of knowledge of the testing performed by UL is misplaced. Accordingly, Everex's assertion should be deemed admitted.

29. UL Standard 873, Temperature Indicating and Regulating Equipment is applicable to the spacing requirements for controls located on the Everex control boards. See Glover Affidavit at ¶ 14 and 15 and Exhibit 7 and Sy Declaration at ¶ 6.

**Tower's Opposition 56.1 Statement:**

**Admitted**: Statement not disputed by Tower.

30. The Everex control board fully complies with the footnotes contained in Table 32.1 of UL 873, which sets forth the minimum spacing for controls. See Glover Affidavit at ¶ 14 and 15 and Exhibit 7 and Sy Declaration at ¶ 7.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Neuhalfen Rpt., p. 6-7 at Ex. A to Haworth Dec. in Opposition to Summary Judgment; Eberhardt Rpt., p. 3, 5-6 at Ex G to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion regarding Everex's compliance with the spacing requirements set forth in the footnotes contained in UL 873. Neither report referenced in Tower's opposition references or examines the footnotes to UL 873. Accordingly, Everex's assertion should be deemed admitted.

31. The terminals on the Everex control board at issue are of the same polarity, not opposite polarity. See Glover Affidavit at ¶ 16.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Neuhalfen Rpt., p. 6-7 at Ex. A to Haworth Dec. in Opposition to Summary Judgment; Eberhardt Rpt., p. 3, 5-6 at Ex G to Haworth Dec. in Opposition to Summary Judgment.; Gregory Dep., p. 100-101 at Ex. I to Haworth Dec. in Support of Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion regarding same polarity as neither of its experts examine or even reference UL 224A in their reports. Accordingly, Everex's assertion should be deemed admitted.

32. Tower erroneously applies minimum spacing standards for opposite polarity terminals when the terminals in questions on the Everex control board are not of

16

opposite polarity. See Glover Affidavit at ¶ 14, 15 and 16 and Exhibit 7 and Sy Declaration at ¶ 6.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Neuhalfen Rpt., p. 6-7 at Ex. A to Haworth Dec. in Opposition to Summary Judgment; Eberhardt Rpt., p. 3, 5-6 at Ex G to Haworth Dec. in Opposition to Summary Judgment.; Gregory Dep., p. 100-101 at Ex. I to Haworth Dec. in Support of Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's assertion regarding same polarity as neither of its experts examine or even reference UL 224A in their reports. Accordingly, Everex's assertion should be deemed admitted.

33. Footnotes e. and g. to UL 873, provide for a minimum spacing between same polarity live parts like the terminals on the Everex control board to be not be less than 1/32 inch through air and 1/16 inch or surface and not be less than 1/32 inch through air and 3/64 inch over surface. See Glover Affidavit at ¶ 14 and 15 and Exhibit 7 and Sy Declaration at ¶ 7.

**Tower's Opposition 56.1 Statement:**

**Denied**: See Neuhalfen Rpt., p. 6-7 at Ex. A to Haworth Dec. in Opposition to Summary Judgment; Eberhardt Rpt., p. 3, 5-6 at Ex G to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's statement regarding the minimum spacing requirements set forth in the footnotes to UL 873. Accordingly, Everex's assertion should be deemed admitted.

34. The spacing between the terminals at issue on the Everex control board is 2.0 mm or 0.07874 inches, a distance that exceeds requirements for minimal spacing between same polarity live parts set forth in footnotes e. and g. to UL 873. See Glover Affidavit at ¶ 14, 15 and 16 and Exhibit 7 and Sy Declaration at ¶ 7.

**Tower's Opposition 56.1 Statement:**

<u>**Denied**</u>: <u>See</u> Neuhalfen Rpt., p. 6-7 at Ex. A to Haworth Dec. in Opposition to Summary Judgment; Eberhardt Rpt., p. 3, 5-6 at Ex G to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's statement regarding the minimum spacing requirements set forth in the footnotes to UL 873. Accordingly, Everex's assertion should be deemed admitted.

35. The Everex control board satisfies the requirements of both footnotes e. and g. to UL 873. See Glover Affidavit at ¶ 14 and 15 and Exhibit 7 and Sy Declaration at ¶ 7.

**Tower's Opposition 56.1 Statement:**

<u>**Denied**</u>: <u>See</u> Neuhalfen Rpt., p. 6-7 at Ex. A to Haworth Dec. in Opposition to Summary Judgment; Eberhardt Rpt., p. 3, 5-6 at Ex G to Haworth Dec. in Opposition to Summary Judgment.

**Everex Reply:**

Tower's statement is not responsive and it fails to "specifically controvert" Everex's statement regarding the minimum spacing requirements set forth in the footnotes to UL 873. Accordingly, Everex's assertion should be deemed admitted.

### Everex's Reply to Tower's Counter Statement of Disputed Material Facts

Everex objects to Tower's reference to and reliance upon its Rule 56.1 statement submitted in support of its summary judgment motion against Goodman as those statements are not properly before the Court for the purposes of Everex's summary judgment motion. To the extent that the Court permits Tower's incorporation of those statements here, Everex hereby incorporates and relies upon Goodman's opposition to those statements.

1. Denied. See Glover Affidavit and Sy Declaration.

2. Denied. See Glover Affidavit and Sy Declaration.

3. Denied. See Glover Affidavit and Sy Declaration.

4. Denied. See Glover Affidavit and Sy Declaration.

5. Denied. The UL Certification Report specifically references UL 873 in its entirety and does not state that footnotes to the standard do not apply or should be ignored. See Haworth Declaration at Exhibit C.

6. Denied. Tower's reliance upon the deposition testimony of Vincent Chan, an employee of Everex, concerning his lack of knowledge of the testing performed by UL is misplaced. See Glover Affidavit and Sy Declaration.

7. Denied. See Glover Affidavit and Sy Declaration.

8. Denied. See Glover Affidavit and Sy Declaration.

Dated: Melville, New York
March 7, 2011

By: *James M. O'Hara*
James M. O'Hara (JO3404)
SPEYER & PERLBERG, LLP
115 Broadhollow Road, Suite 250
Melville, New York 11747
Telephone: (631) 673-6670
Facsimile: (631) 673-7073
*Attorneys for Second Third-Party Defendant Everex Communications, Inc.*

S:\CURRENT\DMP\Everex adv. Goodman\Motions\Everex's Motion for Summary Judgment\Everex's Reply To Tower's Opposition To Everex's Local Rule 56.1 Statement.doc