```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
GAETANO DEVELOPMENT CORP., GATEWAY    :
IV, LLC, and HARTFORD FIRE INSURANCE  :
COMPANY a/s/o Gateway IV, LLC,        :   Case No. 09-CV-10090
                                      :   (Consolidated)
                Plaintiffs,           :
                                      :
        -against-                     :
                                      :
GOODMAN MANUFACTURING COMPANY, L.P.,  :
GOODMAN COMPANY, L.P. and GOODMAN     :
GLOBAL, INC.,                         :
                                      :
                Defendants.           :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
GOODMAN COMPANY, L.P.,                :
                                      :
                Third-Party Plaintiff,:
                                      :
        -against-                     :
                                      :
TOWER MANUFACTURING CORPORATION,      :
                                      :
                Third-Party Defendant.:
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
TOWER MANUFACTURING CORPORATION,      :
                                      :
         Second Third-Party Plaintiff,:
                                      :
        -against-                     :
                                      :
EVEREX COMMUNICATIONS, INC., PRIME    :
TECHNOLOGY (GUANGZHOU), INC.,         :
CONNECTICUT PTAC SERVICES, LLC, and   :
COOL TECH HVAC SERVICE, LLC           :
                                      :
         Second Third-Party Defendants.:
– – – – – – – – – – – – – – – – – – – – – – – – – – – – x
```

**TOWER MANUFACTURING CORPORATION'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION AGAINST GOODMAN**

# Table of Contents

**PRELIMINARY STATEMENT** ................................................................................................ 1

**ARGUMENT** ............................................................................................................................. 1

    I.    GOODMAN'S CONTRIBUTION CLAIM MUST BE DISMISSED BASED ON NEW YORK GENERAL OBLIGATION LAW 15-108 .......................................... 1

    II.   SINCE GOODMAN'S LIABILITY IS NOT VICARIOUS, IT IS NOT ENTITLED TO COMMON LAW OR STATUTORY INDEMNIFICATION ................. 2

    III.  GOODMAN IS NOT ENTITLED TO CONTRACTUAL INDEMNIFICATION. ............. 4

    IV.  GOODMAN CANNOT MEET ITS BURDEN OF PROOF ON CAUSATION ............ 7

**CONCLUSION** ....................................................................................................................... 10

# Table of Contents

**Cases**

*Commander Oil Corp. v. Advance Food Service Equipment*,
  991 F.2d 49 (2d Cir. 1993) .................................................................................. 5

*Gilks v. Olay Co., Inc.*,
  30 F.Supp.2d 438 (S.D.N.Y.1998) ...................................................................... 8

*Heimbach v. Metropolitan Transport Authority*,
  75 N.Y.2d 387, 553 N.Y.S.2d 653 (1990) ........................................................ 5, 6

*Heller v. U.S. Suzuki Motor Corp.*,
  64 N.Y.2d 407, 488 N.Y.S.2d 132, 477 N.E.2d 434 (1985) ................................ 8

*Hooper Associates Ltd. v. AGS Computers, Inc.*,
  74 N.Y.2d 487, 549 N.Y.S.2d 365 (1989) ........................................................... 5

*Kennedy v. Peninsula Hosp. Center*,
  135 A.D.2d 788, 522 N.Y.S.2d 671 (2d Dept. 1987) ........................................... 8

*Lettiere v. Martin Elevator Co., Inc.*,
  62 A.D.2d 810, 406 N.Y.S.2d 510 (2d Dept. 1978) ............................................. 1

*Levine v. Shell Oil Co.*,
  266 N.E.2d 799, 321 N.Y.S.2d 81 (1971) ........................................................... 5

*Makeun v. State*,
  98 A.D.2d 583, 471 N.Y.S.2d 293 (2d Dept. 1984) ......................................... 1, 2

*Rosado v. Proctor & Schwartz, Inc.*,
  66 N.Y.2d 21, 494 N.Y.S.2d 851 (1985) .................................................. 3, 5, 6, 8

*Tardella v. RJR Nabisco, Inc.*,
  178 A.D.2d 737, 576 N.Y.S.2d 965, (3rd Dept.1991) .......................................... 8

**Statutes**

New York General Obligations Law 15-108 .............................................................. 1, 2

## PRELIMINARY STATEMENT

Third-Party Defendant/Second Third-Party Plaintiff, Tower Manufacturing Corporation ("Tower"), respectfully submits this memorandum of law in reply to Goodman Company, L.P.'s ("Goodman") Opposition and in further support of Tower's motion for summary judgment seeking dismissal of Goodman's Third-Party Complaint.

## ARGUMENT

### I. GOODMAN'S CONTRIBUTION CLAIM MUST BE DISMISSED BASED ON NEW YORK GENERAL OBLIGATION LAW 15-108

Goodman argues that, despite its settlement with plaintiffs, its contribution claim against Tower is not waived under New York General Obligations Law ("NY GOL") 15-108 because it followed the Court's partial granting of summary judgment and therefore the settlement was not voluntary.  See Goodman Mem. P. 16-17.

There is no support for Goodman's position.  In *Makeun v. State*, 98 A.D.2d 583, 471 N.Y.S.2d 293 (2d Dept. 1984), a case omitted from Goodman's brief but directly on point, the Court held that a party who settled with plaintiff after a jury verdict of negligence but before an adjudication as to damages was not permitted to seek contribution under New York law.  The Court held that "in the instance of GOL 15-108(c), unless culpability and damages (i.e. liability) are fully and finally determined by either a court or a jury; and, judgment entered upon that determination, contribution cannot be obtained." *Id.* at 586, 295; see also *Lettiere v. Martin Elevator Co., Inc.*, 62 A.D.2d 810, 406 N.Y.S.2d 510 (2d Dept. 1978) (denying contribution under NY GOL 15-

108 to a party who consented to the entry of liability and a $250,000 judgment against it to be entered following the jury's verdict.)

In dismissing the contribution claim, the *Makeun* court explained the difference between a settlement made prior to the entry of a money judgment following trial and one made before.  The Court stated "[a] different situation exists in the case of a settlement made prior to the entry of a money judgment. In such a circumstance, it is the settlement, rather than the fact finder, which determines the amount of damages…*Until the settlement is reached, there is no obligation.* From this point of view, in a sense, any payment or settlement prior to the entry of a money judgment can be considered voluntary." *Id.* at 590.

Here, the Court's July 9, 2010 Order granting partial summary judgment on certain of plaintiffs' causes of action and denying summary judgment on others including certain damages claims does not constitute a final adjudication of liability and damages. Goodman was not obligated to pay any damages following that ruling and, as the Court's Order made clear, a trial was still necessary to adjudicate the remaining claims and fix any damages to be awarded.  Accordingly, Goodman's settlement with plaintiffs must be considered pre-judgment and voluntary requiring dismissal of Goodman's contribution claim against Tower under NY GOL 15-108.

## II.  SINCE GOODMAN'S LIABILITY IS NOT VICARIOUS, IT IS NOT ENTITLED TO COMMON LAW OR STATUTORY INDEMNIFICATION

Goodman argues that it is entitled to common law and/or statutory indemnity from Tower because its negligence was "passive" rather than "active."  See Goodman

2

Mem. P. 12-16.  It likens itself to an innocent retailer that played no role in the design, assembly or manufacture of PTACs.  Citing cases involving New York's Labor Law, respondeat superior and the Vehicle and Traffic Law, it argues that, even if it played some role in the loss, its role was "passive."  See Goodman Mem. P. 12-15.

There is no basis for Goodman's position as it is well settled in New York that claims of negligence and strict products liability, such as those asserted by plaintiffs against Goodman, are not comparable to claims of vicarious liability.  In *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 494 N.Y.S.2d 851 (1985), the Court of Appeals addressed this very issue.  It held that "[a] strict products liability action is not analogous to vicarious liability, resulting in the imposition of liability without regard to fault. A manufacturer is held accountable as a wrongdoer…Any analogy to vicarious liability under the Labor Law,…respondeat superior, or the Vehicle and Traffic Law - instances in which liability is fixed upon another without regard to any volitional act-is clearly flawed."  *Id.* at 25-26, 854.  In dismissing the manufacturer's common law indemnification claims against the purchaser, the Court held that "a party who has settled and seeks what it characterizes as indemnification thus must show that it may not be held responsible in any degree. The statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification."  *Id.* at 854.

Here, Goodman had an independent duty as the designer, manufacturer, and assembler of PTAC units to provide a product that would not catch fire and would perform as intended.  See *Rosado*, supra.  Its liability to plaintiffs is therefore not vicarious.  Even putting aside its role as the manufacturer, Goodman played a direct role in the damages incurred by plaintiffs based on:

3

- its failure to notify plaintiffs of the recall despite having a sales representative selling additional PTACs to plaintiffs just several weeks before the first fire in March 2009 (Apt. 2B) (see Deposition of Ray Carroll, p. 88-89 at Ex. S to Haworth Dec.);

- its failure to send the recall notice to the correct address for plaintiffs or otherwise notify plaintiffs of the recall despite having plaintiffs' address, telephone number and email address on file (Gaetano Aff. ¶ 5-6, 12-14 at Ex. A to Haworth Dec.)

- its inordinate delay in replacing and/or repairing PTAC units in plaintiff's building *after* it had already been in communication with plaintiffs and *after* it already had service technicians at the premises; (Gaetano Aff. ¶ 15-19 at Ex. A to Haworth Dec.)  Goodman was in communication with plaintiffs as of April 3, 2009 yet delayed sending a contractor to inspect and/or service the PTAC units until May 18, 2009.  Id.  It then failed to respond to plaintiffs' request to replace all circuit boards in the PTAC units until yet a third fire occurred in February 2010.  Id.

- Two fires (apts. 4B and 6B) that occurred on Goodman PTAC units that already had their power cords replaced and otherwise had been serviced and/or repaired by Goodman-hired service technicians before the fires. (See Gaetano Aff. ¶ 21, 29-31, 34-35 at Ex. A.)  Goodman had effectively taken control of these units prior to the fires and could have performed whatever inspections/repairs it deemed necessary in order to provide plaintiffs with PTAC units that would perform as intended.  Even non-Tower experts agree that Goodman should have replaced the circuit boards in apartments 4B and 6B when they were replacing the power cords.  See Pryor Report, p. 3 ("Both the PC board and the cordage should have been replaced since the condition of each board would have been unknown).

Since Goodman is not free of fault and its liability is not vicarious, it cannot maintain a claim for common law or statutory indemnification based on any theory of recovery.

### III.     GOODMAN IS NOT ENTITLED TO CONTRACTUAL INDEMNIFICATION

Goodman argues that, even if it is shown to be actively negligent, a Statutory Compliance clause in the Purchase Order, providing for indemnity for damages resulting from violations of U.S. or state law or regulations, should be read expansively

4

to include an agreement by Tower to indemnify Goodman for strict products liability and negligence claims and even for Goodman's own negligence.  See Goodman Mem. P. 10-11.  To agree with Goodman's tortured interpretation of the clause, one must ignore the clause's express language which clearly limits the scope of the indemnity provided.

There is no support for Goodman's position because, under New York law, indemnification agreements are to be strictly construed; a court cannot find a duty to indemnify absent manifestation of a "clear and unmistakable intent" to indemnify. *Heimbach v. Metropolitan Transport Authority,* 75 N.Y.2d 387, 553 N.Y.S.2d 653, 657 (1990); *Commander Oil Corp. v. Advance Food Service Equipment*, 991 F.2d 49, 51 (2d Cir. 1993)(Court's function is to "discern the intent of the parties to the extent their intent is evidenced by their written agreement.")  When a party is under no legal duty to indemnify, a contract assuming that obligation must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed.  *Hooper Associates Ltd. v. AGS Computers, Inc.*, 74 N.Y.2d 487, 492, 549 N.Y.S.2d 365, 367 (1989).  A promise "should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances."  Id.; see also *Levine v. Shell Oil Co.*, 266 N.E.2d 799, 321 N.Y.S.2d 81 (1971)(holding that a party cannot seek contractual indemnification for its own negligence absent an express agreement to that effect.); *Rosado v. Proctor & Schwartz, Inc.,* 66 N.Y.2d 21, 494 N.Y.S.2d 851 (1985)("one who is actively negligent has no right to indemnification unless he can point to a contractual provision granting him that right…")

5

Here, Goodman's expanded interpretation of the Statutory Compliance clause must be rejected. Unlike indemnity agreements containing broad-based language providing indemnity "against any and all claims" or "against any and all liability" or for "any losses", Goodman's Statutory Compliance clause is limited by its express terms to liability "arising out of Seller's non-compliance with the laws or regulations of the United States or any state or any governmental authority or agency…" It does not contain, as required by New York law, a "clear and unmistakable intent" for Tower to indemnify Goodman for all claims let alone the strict products liability, negligence, breach of warranty and breach of contract claims asserted by plaintiffs. See *Heimbach v. Metropolitan Transport Authority,* 75 N.Y.2d 387, 553 N.Y.S.2d 653, 657 (1990).

While Goodman may argue that the PTAC units in plaintiffs' building were the subject of a voluntary recall that Goodman issued in conjunction with the Consumer Products Safety Commission ("CPSC"), plaintiffs did not seek damages from Goodman based on any claimed violations of CPSC regulations. A review of the underlying complaints show that all of plaintiffs' causes of action were based on negligence, strict products liability, breach of contract and breach of express and implied warranties. See Exs. A and B of Goodman's Third Party Complaint at Ex. D to Haworth Dec. in Support of Summary Judgment. Whether Goodman or, for that matter, Tower violated any statutory law or regulation was immaterial to plaintiffs' claims and would not present a bar to plaintiffs' recovery. Moreover, the recall with the CPSC was voluntary, in Tower's view was not supported by adequate data, was not based on a finding that any law or regulation was violated, and was undertaken by Goodman without seeking Tower's prior approval or input. Goodman, having not consulted with Tower, cannot now turn around

6

and use the recall as a basis to seek indemnity from Tower. In addition, to the extent that Goodman is seeking to recover costs related to the recall, it has already filed an action seeking such damages in the United States District Court, Southern District of Texas, Houston Division. See Goodman Company v. Tower Manufacturing Corporation, et al., 4:10-CV-02553.

Based on the foregoing, Goodman's claim for contractual indemnification based on the Statutory Compliance clause must be dismissed.

### IV. GOODMAN CANNOT MEET ITS BURDEN OF PROOF ON CAUSATION

Goodman argues that because "causation is at least disputed, summary judgment is not appropriate." See Goodman Mem., p. 4. In support, it relies on a manufacturing hazard analysis document written by Tower which generally discussed the risks of inadequate terminal connections; its claim that no fires have occurred with power cords made with AMP tooling, when in fact the May 2009 and February 2010 fires involved PTAC units with power cords made with AMP tooling; a May 2008 Corrective Action Notice that did not pertain to the PTACs sold to plaintiffs in October 2007; the claims of its experts[1]; and the fact that Tower agreed to provide new power cords to Goodman and use AMP tooling without cost to Goodman, a decision based on pleasing the customer rather than an admission by Tower that the prior tooling was inadequate. See Goodman Mem. P. 5-7.

---

[1] Goodman references its expert Andrew Diamond on causation yet fails to mention that Mr. Diamond never reviewed any Goodman design documents related to the M61 circuit board and therefore took no steps to rule out the circuit board as a cause of the fires. See Deposition of Andrew Diamond, p. 70 at Ex. R to Haworth Dec.

7

To defeat Tower's motion, it is not enough for Goodman to show that a defect with Tower's power cord is a possible cause of the fires. Rather, it must come forth with evidence showing it is more probable than not that a defect with Tower's power cord, rather than a defect with the circuit board, caused all three fires at plaintiff's building. See *Kennedy v. Peninsula Hosp. Center,* 135 A.D.2d 788, 792, 522 N.Y.S.2d 671 (2d Dept. 1987)(the burden upon plaintiff is to show that "it is more probable than not that the injury was caused by [a given] defendant."); see also, *Tardella v. RJR Nabisco, Inc.,* 178 A.D.2d 737, 576 N.Y.S.2d 965, 966 (3rd Dept.1991)(citing *Rosado v. Proctor & Schwartz,* 66 N.Y.2d 21, 25, 494 N.Y.S.2d 851, 854, 484 N.E.2d 1354 (1985)("whether the action is pleaded in strict products liability, breach of warranty or negligence," the plaintiff in a products liability case bears the burden of establishing "that a defect in the product was a substantial factor in causing the injury."); *Heller v. U.S. Suzuki Motor Corp.,* 64 N.Y.2d 407, 412, 488 N.Y.S.2d 132, 135, 477 N.E.2d 434 (1985); s*ee also Gilks v. Olay Co., Inc.,* 30 F.Supp.2d 438, 443 (S.D.N.Y.1998)  (interpreting New York law).

Tower submits that Goodman has not met its burden of proof.  None of the evidence submitted by Goodman contradicts Tower's position that, even if there was an issue with Tower's cord or some slight difference in crimps made with AMP as opposed to non-AMP tooling, had the Line 2 and Compressor circuits on the M61 circuit board been spaced with the proper ¼ inch safety margin required by Underwriters Laboratories, none of the fires would have occurred.  It is the propensity of the M61 circuit board to arc due to inadequate spacing between the Line 2 and Compressor circuits which is causing the fires.  The source of the contaminants, e.g. moisture, dust,

or even contaminants from Tower's cord, would not play any role in causing a fire had the M61 been properly spaced.  See Eberhardt Report, p. 4-5 at Ex. G to Haworth Dec.

Goodman's opposition also fails to address the test data submitted by Tower in support of its motion.  The loose wire test demonstrated that, even with a significantly loose crimp connection, the connector will not heat up to any significant degree to cause damage to the M61.  See Eberhardt Rpt., p. 3-4 and 7 at Ex. G, Rao Dec. ¶ 13 and Ex. 4 to Rao Dec. at Ex. H; Gregory Dep., p. 119 at Ex. I to Haworth Dec.  The glow wire test showed that even source temperatures of 750 degrees Fahrenheit when applied to the crimp connector fail to produce charring or arcing of the M61 circuit board.  See Eberhardt Rpt., p. 6-7.  The surface arc tracking tests, recognized by UL 746, demonstrated that the M61 circuit board was prone to arcing between the Line 2 and Compressor circuits.  These tests showed evidence of charring, arcing and burning along the trace separation between the Line 2 and Compressor Circuits.  See Eberhardt Rpt., p. 6.  The pattern of damage was very characteristic of the failed M61 circuit boards in apartments 2B, 4B and 6B of plaintiff's building.   Id.

Goodman's opposition also fails to address the factual evidence.  While it claims that the fires in the PTAC units in apartments 4B and 6B occurred, despite the installation of new power cords because of prior damage from the old cords, it offers no reasonable explanation why two Goodman service technicians missed the claimed damage when they were installing new power cords in apartments 4B and 6B prior to these fires.  This work required direct observation of the area where Goodman claims pre-existing damage would have been present i.e. at the Line 2 and Compressor terminals on the circuit board.  See Deposition of Kenneth Shanklin, p. 116-117, 119  at

9

Ex. P to Haworth Dec.; see also Deposition of Vincent Croce, p. 35, 41 at Ex. Q to Haworth Dec.  Goodman's claim that such damage may be difficult to see is contradicted by its own expert, Andrew Diamond, who testified that the circuit board damage he observed on units that had not been involved in PTAC fires was open and obvious. See Deposition of Andrew Diamond, p. 254-255 at Ex. R to Haworth Dec.

Given the foregoing, Goodman cannot meet its burden of proof on causation and summary judgment should be granted in Tower's favor.

## CONCLUSION

For the foregoing reasons, Tower respectfully requests that its motion for summary judgment against Goodman be granted in its entirety.

Dated:    New York, New York
          March 7, 2011

*[signature]*

_____
Scott L. Haworth (SH-3890)
Barry L. Gerstman (BG-3691)
HAWORTH COLEMAN & GERSTMAN LLC
45 Broadway, 21st Floor
Telephone: (212) 952-1100
Facsimile: (212) 952-1110
Attorneys for Third-Party Defendant/
Second Third-Party Plaintiff
Tower Manufacturing Corporation

## CERTIFICATE OF SERVICE

      I, Scott L. Haworth, hereby certify and affirm that a true and correct copy of the attached **TOWER MANUFACTURING CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS SUMMARY JUDGMENT MOTION** was served via ECF on March 7, 2011, upon the following:

Dennis Perlberg, Esq.
SPEYER & PERLBERG, LLP
Attorneys for Second Third-Party Defendant
Everex Communications, Inc.
115 Broadhollow Road, Suite 250
Melville, New York  11747

Steven Bennett, Esq.
Maxime Guindo, Esq.
JONES DAY
Attorneys for Defendants/Third-Party Plaintiffs
Goodman Global, Inc., Goodman Company, L.P.
and Goodman Manufacturing Company, L.P.
222 East 41st Street
New York, New York  10017

Michael J. Dougherty, Esq.
WELTMAN, WEINBERG & REIS, CO., L.P.A.
Attorneys for Second Third-Party Defendant
Prime Technology (Guangzhou), Inc.
325 Chestnut Street, Suite 501
Philadelphia, PA 19106


Dated: New York, New York
      March 7, 2011

_/s/ Scott L. Haworth_

_____
Scott L. Haworth (SH-3890)
Barry L. Gerstman (BG-3691)
HAWORTH COLEMAN & GERSTMAN LLC
45 Broadway, 21st Floor
Telephone: (212) 952-1100
Facsimile: (212) 952-1110
Attorneys for Third-Party Defendant/
Second Third-Party Plaintiff
Tower Manufacturing Corporation

12